UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                                              CASE NO: 5:19-cr-5-Oc-28PRL

JUSTIN LEWIS

_____/

**REPORT & RECOMMENDATION**[1]

Defendant Justin Lewis is charged by indictment with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). (Doc. 1). Lewis has filed a motion to suppress evidence seized by the government through orders under 18 U.S.C. § 2703(d) and while executing search warrants of his email, residence, and electronic devices. He has requested a *Franks* hearing to contest the validity of the orders and warrants.[2] (Doc. 14). The government has responded to the motion. (Doc. 32).

In reviewing the motion, the Court has, at the parties' request, considered records that were created in the Northern District of Florida, where Lewis faces separate charges. In addition, the Court conducted its own hearing to allow Lewis to present supplemental argument and evidence in support of his motion. Lewis submitted multiple additional exhibits and testified at the hearing—mainly offering his own commentary and argument on the evidence. In addition, Lewis filed a twenty-six-page closing argument that included an additional thirty pages of line-by-line commentary on the previous hearing. After a review of this voluminous record and upon referral from the district court, I submit that the motion is due to be denied.

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636(b)(1), and Rule 6.02, Local Rules, M.D. Fla., within fourteen days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

[2] *Franks v. United States*, 438 U.S. 154 (1978).

## I.   BACKGROUND

In addition to this case, Lewis also faces charges for wire fraud in the Northern District of Florida. Case No. 1:18-cr-15. The fraud investigation in the Northern District began when FBI Special Agent Brannon Baxter determined, based on a referral from Lewis's bank and information from Verizon Wireless, that Lewis was involved in a scheme to re-sell wireless data accounts obtained as part of his corporate account. (Doc. 15-1, ¶¶4–10) (Doc. 37-1, pp. 17–18).

The government then obtained two orders under the Stored Communications Act, 18 U.S.C. § 2703(d), directing Verizon and eBay to disclose additional information related to accounts associated with the alleged fraud. (Doc. 15-1, 18-2). Based on an affidavit provided by Agent Baxter, the government then sought, and received, search warrants for Lewis's Gmail account. (Doc. 15-2). The government used information obtained from Lewis's Gmail account and other sources to seek a search warrant for Lewis's home address from this Court. (Doc. 16-1, 17-1). Following a search of Lewis's home, the government identified several electronic devices that it believed contained child pornography. (Doc. 18-1, ¶¶4–6). The government then received ten separate warrants to search each of these devices and allegedly discovered evidence of child pornography. (Doc. 18-1).

Lewis has filed a motion to suppress the evidence in this case based on alleged material and intentional, or reckless, misrepresentations made by law enforcement in their affidavits seeking to establish probable cause. (Doc. 14). Lewis challenged these same applications in his pending case in the Northern District of Florida. The district judge there found that Lewis failed to show that the applications "contained material deliberate falsehood or reckless disregards for

the truth" and denied the motion to suppress. *United States v. Lewis*, No. 1:18-cr-15, slip op. at 13 (N.D. Fla. Jan. 9, 2019).

Lewis filed the same motion to suppress here and provided the records from the previous proceeding, including the testimony of Lewis and Agent Baxter. (Doc. 14, 37-1, 38-1). Lewis supplemented the record with additional filings in this Court. (Doc. 40-1, 41-1, 42-1). The parties agreed that the Court can rely on the records from the Northern District in making its factual findings and neither party made any procedural objections to how the district judge in the Northern District of Florida disposed of the order. (Doc. 31).

In the Northern District, the judge held a "pre-*Franks*" hearing where Lewis was given a chance to expound on his argument while the government was given the opportunity to explain the discrepancies in its affidavit. *See United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013). Lewis was also given "a full opportunity to challenge or rebut that evidence." *Id.* The Court has considered the district judge's opinion from the Northern District, but is making its own independent findings based on the record, including the supplemental records and the hearing held here. *See United States v. Harnage*, 976 F.2d 633, 636 n.4 (11th Cir. 1992). At this hearing here, Lewis provided additional testimony and commentary on the supplemental exhibits provided to the Court. (Doc. 42, 44).

**II.    STANDARD**

"Under the Fourth Amendment, a search warrant must be supported by a sworn affidavit containing information that 'is believed or appropriately accepted by the affiant as true.'" *United States v. Rocher*, No. 2:17-cr-107, 2018 WL 1071892 (M.D. Fla. Feb. 26, 2018) (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)). "Affidavits supporting warrants are presumptively valid." *United States v. Lebowitz*, 676 F. 3d 1000, 1010 (11th Cir. 2012).

3

"Under *Franks*, a defendant may challenge the veracity of an affidavit in support of a search warrant if he makes a 'substantial preliminary showing' that (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the challenged statement or omission was essential to a finding of probable cause." *United States v. Arbolaez*, 450 F.3d 1283, 1293 (11th Cir. 2006). A defendant who satisfies both prongs is entitled to an evidentiary hearing. *Id.* If, at the hearing, "perjury or reckless disregard for the truth is established by a preponderance of the evidence," and if after the false information is set aside and the remaining facts are insufficient to support probable cause, then "the search warrant must be voided and the fruits of the search excluded." *Franks*, 438 U.S. at 156.

As to the first prong, the defendant must point to specific portions of the search warrant that are claimed to be false and support those allegations "by an offer of proof, including affidavits or sworn or otherwise reliable statements of witnesses; conclusory allegations of negligence or innocent mistakes are insufficient." *Leach*, 498 F. App'x at 917. While, as to the second prong, "in order to be entitled to relief, a defendant must show that the misrepresentations or omissions were material, which means that, absent the misrepresentations or omissions, probable cause would have been lacking." *Id.*

### III.   DISCUSSION

As an initial matter, the Court notes that much of the supplemental exhibits provided by Lewis are similar to Lewis's testimony, mere commentary on issues in the case. (Doc. 42, 44). The exhibits aren't a supplement to the actual issues raised in Lewis's motion to suppress, or to topics raised in the proceedings in the Northern District. Rather, they are new arguments embedded in what Lewis's counsel refers to repeatedly as demonstrative aids.

For example, in Doc. 44, Exhibit F-3, which is a "demonstrative aid," Lewis himself annotates the § 2703(d) Verizon application and order by noting that the application says Verizon is in Bedminster, New Jersey while the order says its location is Bedford, New Jersey. Defense counsel, in his briefs to the Court, doesn't explain why this discrepancy matters, though.

Lewis, not counsel in argument to the Court, then provides a legal assessment of his interpretations of 18 U.S.C. § 2703. Lewis's personal legal assessment then continues for the remainder of the exhibit as he annotates the order nearly line-by-line. Lewis does this for each order—even referring to it, correctly, as "commentary." *See* (Doc. 44, Exh. F-3, L-3, P-3, & R-3). None of Lewis's personal legal opinions or commentary change the evidence or show that while Agent Baxter noted inaccuracies or typos, they were at most the result of mere negligence not the product of intentional or reckless acts. As Judge Walker noted in his order, Lewis is objecting to misrepresentations that are "*at most* the result of mere negligence." (No. 1:18-cv-15, Doc. 73 at 6). Nevertheless, the Court will consider Lewis's allegations as to each application and affidavit.

A. Verizon § 2703 Order

The government obtained the Verizon order under § 2703(d).[3] (Doc. 15-1). The order required Verizon to produce records and information—excluding the contents of communications not involving representatives and employees of Verizon—associated with accounts for Lewis, Linda Maloney (Lewis's mother), and three corporate entities: Razor Repair, Page Plus, and Page Plus Unlimited LLC. (Doc. 42-1, Exh. F-2).[4]

---

[3] Lewis has provided no support for the proposition that *Franks* is applicable to § 2703, and the Court doubts that it is. *See United States v. Thousand*, 558 F. App'x 666, 669–70 (7th Cir. 2014). However, as the district judge in the Northern District did, for purposes of Lewis's motion the Court will assume *Franks* applies as suppression is not warranted even if the *Franks* standard is applied here.

[4] Lewis's closing argument alleges, without providing any further argument or support, that "law enforcement violated 18 U.S.C. § 2701" in obtaining the § 2703 and the Google warrant. (Doc. 54, p. 9). The closing argument then refers generally to the "demonstrative aids" prepared by Defendant. As noted above, these "demonstrative aids" are not proper argument. Even if they were, however, the Court sees

Section 2703(d) authorizes the court to issue an order to a third party to produce records if the government "offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). This "reasonable grounds" standard is less searching than the "probable cause" standard. *See Carpenter v. United States*, 138 S.Ct. 2206, 2221 (2018) (noting that the Stored Communications Act "showing falls well short of the probable cause required for a warrant").

Throughout his motion and specifically as it relates to the Verizon order, Lewis makes much of the fact that the affidavit states that a number at issue, (727) 294-0008, "belongs" to Lewis, but that the number was actually registered to his mother. (Doc. 15-1, ¶9). At the first hearing, however, Agent Baxter offered an explanation for the discrepancy. (Doc. 37-1, pp. 17–18). He explained that an investigator from Lewis's bank informed the government that it believed an unnamed customer was improperly using a personal account for business purposes.[5] (Doc. 37-1, pp. 15, 77). The bank provided Agent Baxter an advertisement for cell phone data plans that the bank believed was tied to the misuse of the account. (Doc. 44-1, Exh. E). The government then provided the advertisement to Verizon, which confirmed that Lewis and his company were associated with the account. (Doc. 37-1, p. 16). The government gave Lewis's name to the bank, which verified that Lewis was the customer in question. (Doc. 37-1, p. 14–17).

---

nothing to indicate that law enforcement violated the Stored Communications Act, Lewis's conclusory statements notwithstanding.

[5] Specifically, the investigator at the bank identified Lewis's account as potentially being misused based on the number and amount of transactions moving through the account. The investigator asked a teller at the bank to inquire with Lewis as to how he was using the account. Lewis told the teller that he was re-selling cellular data. The investigator then searched Ocala's craigslist for ads re-selling cellular data and identified the advertisement that it then forwarded to Agent Baxter. (Doc. 37-1, p. 18).

While Verizon verified that Lewis was the customer it suspected of perpetrating a fraud, it did not inform Agent Baxter that the (727) 279-008 number actually belonged to Lewis—although the government seemed to have assumed this conclusion. (Doc. 37-1, p. 67). Agent Baxter explained that at the time who the number belonged to was not important to him—what was important to him was "Verizon saying they lost millions of dollars." (Doc. 37-1, p. 67). Ultimately, though, Agent Baxter conceded that the number belonged to Linda Maloney, although the government maintains that Lewis controlled the number. (Doc. 37-1, p. 18). Agent Baxter also acknowledged at the hearing that it would be more accurate to say the phone number was "linked" to Lewis or "associated" with him rather than that it "belonged" to him. (Doc. 37-1, p. 68).

None of this suggests that the mistake was material or made recklessly or intentionally since the government had a legitimate explanation for the mistake. And the government corrected the information in future filings, suggesting a lack of bad faith. (Doc. 15-2, ¶30) (Doc. 37-1, pp. 29, 81). The Court notes that the § 2703 order was intended to identify records that relate to the underlying fraud scheme. Whether the number belonged to Lewis or his mother is immaterial to the fact that the number was used as part of a fraudulent scheme and an order to produce records related to that phone account was entirely proper under § 2703.

Lewis further argues that the § 2703 order mistakenly refers to him as the owner of "Razor Repair" when the actual owner of the company is, again, his mother, Lisa Maloney. (Doc. 15-1, ¶9). But Agent Baxter explained at the first hearing that he believed that Lewis was the owner of the company based on information provided by Verizon. (Doc. 37-1, p. 21–22). In fact, Lewis had signed the Verizon contract on Razor Repair's behalf, listing himself as "owner" of the company and an authorized contact. (Doc. 43-1). That Agent Baxter incorrectly relied on Lewis's own misrepresentations does not establish intentional misrepresentations or reckless behavior, and

7

there is no indication that the specific ownership of the company was material to the order or any subsequent warrant.

In sum, while the order may technically be incorrect in specifying that the phone number at issue "belongs" to Justin Lewis as well as in implying Lewis "owns" Razor Repair, there is no reason to believe that the specific ownership status of the phone number or the company Razor Repair was material to obtaining the § 2703 order, especially given that Lewis represented himself as the owner of Razor Repair and the phone number was used as a contact in online advertisement offering data plans believed to be fraudulently obtained. (Doc. 43-1) (Doc. 42-1, Exh. E). And there is no evidence that these "misrepresentations" were made intentionally or recklessly as they were based on reasonable inferences from the information known to the government at the time. (Doc. 37-1, p. 81).

### B.  eBay Order

The eBay order is nearly identical to the Verizon order in many respects. (Doc. 18-2). The eBay order contains the same two misstatements as the Verizon order: 1) the 0008 number is said to "belong" to Lewis; and 2) Razor Repair is said to be "owned" by Lewis. As discussed above, these misstatements are neither material nor intentionally or recklessly made.

In addition, Agent Baxter testified that the eBay order was drafted in part by replacing the term "Verizon" with "eBay," leading to several typos. (Doc. 38-1, p. 279). The affidavit described the 0008 number as an "eBay, Inc., telephone number" and describes high levels of data on the "eBay, Inc., network." (Doc. 18-2, ¶¶5, 9). The affidavit also states that Lewis told an "eBay, Inc., representative" that he was permitted to use a corporate cellular account and alleges a "scheme to defraud eBay." (*Id.* ¶10). Agent Baxter testified that these errors were simple mistakes that resulted from careless copying and pasting not intentional or reckless misrepresentations. (Doc. 38-1, p.

281). Agent Baxter also testified that the eBay accounts belonged to Lewis's mother, and the production was insignificant. (Doc. 38-1, pp. 281–82). Nevertheless, even if the production were significant, Lewis has not shown that the misrepresentations were material or intentionally or recklessly made.

### C. Google Warrant

Contracts between Verizon and Razor Repair and Page Plus Unlimited listed the email address juslew352@gmail.com as a contact for those entities. (Doc. 43-1, 43-2). The government obtained a search warrant for information related to this Gmail account as well as the previously discussed telephone number (727) 279-0008, which was linked to a Google Voice account.[6] (Doc. 15-2). The scope of the order included contents of emails associated with the account, all information identifying the account, and all information stored by the individual using the account as well as other information. (Doc. 15-2). Agent Baxter testified that the Gmail account provided a "wealth of information," including communications related to two shell companies allegedly used in the scheme as well as communications with other re-sellers and what Agent Baxter characterized as attempts to "solicit customers" in furtherance of the fraud. (Doc. 37-1, pp. 32–33).

The affidavit in support of the Google warrant clarifies that Razor Repair was Ms. Maloney's company—although Lewis had at least some influence over the company—and no longer represents that the 0008 number belongs to Lewis himself. (Doc. 15-2, ¶¶6–8, 28–30). The government concedes there are two misstatements involving dates used in the affidavits: (1) Verizon identified Lewis as a possible re-seller in November 2016 not 2015; and (2) the letter sent to Lewis by Verizon was dated January 2017 not 2016. (Doc. 32, p. 13 n.1). Lewis has not shown

---

[6] Agent Baxter testified that the production from the Google Voice account was insignificant and "had no significance moving forward in the investigation." (Doc. 37-1, p. 32).

that either mistake was material and, in any event, Special Agent Baxter, who made the affidavit, testified at the first hearing that the mistakes were unintentional typos. (Doc. 38-1, pp. 30–31).

Lewis alleges several misstatements in this affidavit but provides little explanation of how they were material or made intentionally or recklessly. For example, Lewis claims the address given for Page Plus Unlimited (Lewis's home address) is incorrect and the actual principle place of business for the company was his mother's address. (Doc. 14, p. 11). But the address in the affidavit was provided by Lewis in his contract with Verizon as the company's business address. (Doc. 43-2). Lewis himself testified that he regularly did business at his home address and received business invoices for Page Plus Unlimited and credit card bills at his home address. (Doc. 37-1, p. 268) (Doc. 38-1, p. 251–55). Lewis also conceded that he did not work regularly at his mother's place of business, the supposed principle place of business for Page Plus Unlimited, which was primarily an e-cigarette shop with the Page Plus Unlimited logo on the side door. (Doc. 38-1, pp. 241–42).

Lewis also claims that paragraph eighteen of the affidavit, which alleges that his companies did not have employees, is mistaken. (Doc. 15-2, ¶ 18). On cross-examination at the hearing though, Lewis was only able to provide the names of two "independent contractors" or employees for the company. (Doc. 38-1, p. 241). Lewis eventually conceded, as well, that he did not have a re-selling contract with Page Plus, the company that he claimed authorized his re-selling activities. (Doc. 38-1, p. 245).[7]

In sum, the affidavit establishes probable cause to believe that the Gmail account would contain evidence of the fraud. Lewis has not shown that any misstatements in Agent Baxter's

---

[7] Lewis's additional arguments, such as his contentions that the affidavit fails to disclose that there were multiple archived versions of one of his company's websites, are likewise not material and do not suggest any reckless or intentional attempt to withhold information.

10

affidavit were material to the search warrant issuing let alone that they were made recklessly or intentionally made.

### D. Residence Warrant

Following the Verizon order and Google warrant, the government obtained a warrant to search Lewis's property and home. (Doc. 16-1, 17-1). According to Agent Baxter, the warrant was sought for Lewis's residence primarily because Lewis had identified his home address as his place of business on his contract with Verizon. (Doc. 37-1, p. 34). In addition, the affidavit identifies several additional pieces of evidence found in Lewis's Gmail that the government maintained showed that there was probable cause to believe his residence would contain evidence of the fraud, including mail forwarding arrangements (i.e., business mail forwarded to his residence), bills received for his other businesses at his residence, and other contracts listing Lewis's residence as his place of operation. (Doc. 16-1, ¶44).

The government again concedes three errors in this affidavit: (1) paragraph twelve states that Verizon identified Lewis as a reseller in 2015 but the actual year was 2016 (Doc. 37-1, p. 38); (2) paragraph thirteen states that Verizon first identified Lewis as a reseller through eBay advertisements but Verizon actually identified Lewis through his Wireless Management Solutions website and Verizon's analysis of Lewis's data usage (Doc. 37-1, pp. 39–40); and (3) paragraph fifty states that Lewis purchased six Apple computers between October 2015 and April 2017 based on a review of his credit card statements but these purchases could have been for other products or repair services and there is no evidence they were specifically purchases of computers. (Doc. 37-1, pp. 38–41). Agent Baxter testified that these mistakes were made unintentionally based on his understanding of the evidence at the time. (Doc. 37-1, pp. 38–42).

While Plaintiff takes issue with a variety of other statements in the affidavit, labeling them as "misleading" or based on opinion, Lewis does not offer any factual support for his conclusory labels or explain his basis for believing these statements are incorrect and material—let alone for believing they were intentionally or recklessly made. Allegations in a *Franks* motion must be more than conclusory and should include "supporting reasons." 438 U.S. at 177.

Moreover, the motion (along with Lewis's commentaries) characterizes many statements made by Agent Baxter as "opinions" (and objects to them on that basis), when in fact the statements represent reasonable inferences drawn from the evidence in this case. For example, Lewis characterizes as a mere opinion the agent's claim in paragraph fifteen that Verizon suspected Lewis was selling the phones over the internet. (Doc. 14, p. 26). But the affidavit clearly explains the basis for Verizon's conclusion—his data usage and the fact that Lewis sold unlimited data plans on his website.[8]

Given the facts in the affidavit, there was probable cause to believe a search of Lewis's residence, as specified in the court's order, would yield evidence of a fraud. As discussed in more detail above, Lewis conceded that he used his residence for some of his business activities, that he signed contracts using that address, and that he engaged in re-selling—although he argues he believed he was authorized to do so. (Doc. 38-1, pp. 248–52). He also conceded that his home address was used to forward mail for other companies alleged to be involved in the fraud. (Doc. 38-1, p. 255–56). Lewis has not shown that any of the supposed errors in the affidavit was material or provided evidence that any misstatement was intentionally or recklessly made.

---

[8] Lewis argues as well that the government should have obtained an IP address for the computers involved in scheme but fails to explain why the government should have to obtain an IP when the evidence cited in the government's affidavit already sufficiently establishes probable cause. (Doc. 54, p. 6). Agent Baxter explained that he did not believe the IP address was necessary given that the Verizon contract already linked Lewis's email address to his residence address, which were both listed on the contracts. (Doc. 37-1, p. 83).

**E. Devices**

In executing the warrant for Lewis's residence, the government seized several electronic devices at Lewis's home, including computers, iPads, and electronic storage drives. (Doc. 37-1, pp. 45–50). In the process of seizing and reviewing the devices for relevant information, the government allegedly discovered child pornography on Lewis's devices.[9] (Doc. 37-1, p. 50–53). At that point, the government sought and received ten additional warrants to search each seized device for child pornography. (Doc. 18-1). All ten warrants were based on the same master affidavit. (Doc. 18-1).

Agent Baxter testified that he specifically avoided reviewing the files found on the devices that did not relate to the fraud investigation. (Doc. 37-1, p. 56). In fact, he attempted to have another agent put in charge of the child pornography investigation but none was available. (*Id.*).

Lewis argues that the evidence seized from the search of his property is due to be suppressed as "the fruit of the poisonous tree" because the previously discussed warrants contained material misrepresentations made recklessly. But, as discussed above, the only misstatements in the previous affidavits and applications for warrants were not material to the probable cause showing and not made intentionally or recklessly.

Finally, in an effort to preclude what was ultimately discovered on the devices, Lewis argues that the warrant to search his property (i.e., the warrant that lead to the seizure of the devices) lacked specificity "as it relates to any description of the contents of the items to be

---

[9] Agent Baxter explained at the previous hearing that the government has a process for reviewing digital files which involves duplicating the files on a separate device so that the agents can review the duplicate while preserving the original files. In order to ensure that the files have been successfully duplicated, the technicians often test video files on the duplicated device—apparently video files are most likely to show signs that the duplication was corrupted. In this case, when the technicians opened a duplicated video from Lewis's device, they discovered the child pornography. (Doc. 37-1, p. 54).

seized."[10] (Doc. 14, p. 69). He argues that the residence warrant improperly allows the seizure of computers and electronics generally without specifying the files that would be relevant.

The Fourth Amendment requires that warrants "particularly describe[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A general order to explore and rummage through a person's belongings is not permitted. The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981). The U.S Supreme Court has recognized, though, that in some instances the "whole picture" of an illegal scheme can be "shown only by placing in the proper place the many pieces of evidence that, taken singly, would show comparatively little." *Andresen v. Maryland*, 427 U.S. 463, 481 n.10 (1976). "The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime is in the suspect's possession." *Id.*

Here, the affidavit describes a complex financial crime, involving multiple corporate entities engaged in a complicated online scheme. The residence warrant authorizes the seizure of "all records and information relating or evidencing violations" of the wire fraud and money laundering statutes as they relate to a specific list of ten persons and corporate entities, including Justin Lewis, Linda Maloney, Page Plus Unlimited, and Razor Repair. (Doc. 17-1, p. 16). The warrant then describes the types of documents that could be seized in connection with those ten persons or entities. (Doc. 17-1, p. 17–18). Agent Baxter testified that in executing the search, the

---

[10] Technically, Lewis is challenging the warrant to search his residence for a lack of particularity, but the Court will discuss the issue in terms of the warrant to search the electronic devices specifically because the issues are related and were presented this way by Lewis.

agents were instructed to seize only documents that both related to one of the ten persons or entities and that were the type of document listed in the warrant. (Doc. 37-1, p. 44).

As to computers specifically, the warrant also authorizes the seizure of "evidence of who used, owned, or controlled the Computer" as well as evidence of "malicious software" or evidence of programs "designed to eliminate data from the Computer" along with several other categories of records. (Doc. 17-1, p. 19). Agent Baxter testified at the previous hearing that it was necessary for the warrant to include authorization to search computers and electronic storage devices because, as is often the case in searching corporate facilities in complex financial crimes, Agent Baxter did not know before the search how the records and information sought was being stored. (Doc. 37-1, pp. 45–46). He testified that "because of the volume of the spreadsheet activity that [the government] had seen through attachments identified through the Google search" it was reasonable to suspect that Lewis used his desktop computer in the scheme. (Doc. 37-1, p. 44).

Considering the complex nature of the fraudulent scheme alleged in the affidavit and the important role of electronic communications in the scheme, the descriptions provided in the government's warrant application satisfy the particularity requirement of the Fourth Amendment. *See United States v. Wuagneux*, 683 F.2d 1343, 1349–51 (11th Cir. 1982) (recognizing need to read warrants "with practical flexibility" in light of the "difficulty of piecing together the 'paper puzzle'" in a complex financial fraud).

In sum, and as discussed above, the residence warrant contains sufficient facts to establish probable cause and none of the alleged misstatements in the affidavit are material or were the result of intentional falsehoods or reckless behavior. And, for the reasons just stated, the residence warrant satisfies the particularity requirement of the Fourth Amendment. Thus, there is no basis to

preclude the seizure of the devices or suppress what was discovered on them, as they were properly obtained in the search of his home and properly searched pursuant to their own warrants.

### IV. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Defendant's motion to suppress be **denied** as well as Defendant's request for a *Frank*'s hearing. (Doc. 14).

**IT IS SO ORDERED** in Ocala, Florida, on May 6, 2019.

_____
PHILIP R. LAMMENS
United States Magistrate Judge


Copies furnished to:

Counsel of Record
Unrepresented Parties