UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA

v.                                                              CASE NO: 5:19-cr-5-JA-PRL

JUSTIN LEWIS
_____/

**REPORT & RECOMMENDATION**[1]

Defendant Justin Lewis is charged by indictment with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2). (Doc. 1). He now represents himself and has filed several motions that need attention. But before I address those, some background.

**I.     Background**

The criminal scheduling order in this case was issued on February 19, 2019 and set a filing deadline for motions to be filed "[w]ithin twenty-one (21) days from the date of this Order." (Doc. 5). That deadline applied to "all discovery motions, if any, not covered by this order; to all notices (including notices under Fed. R. Crim. P. 12(b)(4), 12.1, 12.2, and 12.3); and to all non-discovery and dispositive motions (including motions for a bill of particulars, to dismiss the indictment, to strike, to suppress evidence, to sever, for a James or Bruton hearing, and motions in limine to exclude the use of evidence under Fed. R. Evid. 404(b))." *Id.*

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. ' 636(b)(1), and Rule 6.02, Local Rules, M.D. Fla., within fourteen days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

Lewis, who was represented then, timely filed a lengthy 75-page motion to suppress, styled "Motion to Suppress and Request for Franks Hearing." (Doc. 14). He also filed (and the Court considered) hundreds of pages of exhibits that included the transcript of a suppression hearing held in a separate case against him in the Northern District of Florida (that involved the same warrants and 18 U.S.C. § 2703 Orders) (see Docs. 14-18, 34-38, 40-42, 44), as well as a post-hearing memorandum that contained a restatement of Lewis's virtually line by line challenge to the warrants and § 2703 Orders (see Doc. 54 and attachments).

From my initial report, recommending the denial of his motion to suppress, here is the summary and initial background that I set forth:

> Lewis has filed a motion to suppress evidence seized by the government through orders under 18 U.S.C. § 2703(d) and while executing search warrants of his email, residence, and electronic devices. He has requested a *Franks* hearing to contest the validity of the orders and warrants.[2] (Doc. 14). The government has responded to the motion. (Doc. 32).
>
> In reviewing the motion, the Court has, at the parties' request, considered records that were created in the Northern District of Florida, where Lewis faces separate charges. In addition, the Court conducted its own hearing to allow Lewis to present supplemental argument and evidence in support of his motion. Lewis submitted multiple additional exhibits and testified at the hearing—mainly offering his own commentary and argument on the evidence. In addition, Lewis filed a twenty-six-page closing argument that included an additional thirty pages of line-by-line commentary on the previous hearing. After a review of this voluminous record and upon referral from the district court, I submit that the motion is due to be denied.
>
> . . .
>
> In addition to this case, Lewis also faces charges for wire fraud in the Northern District of Florida. Case No. 1:18-cr-15. The fraud investigation in the Northern District began when FBI Special Agent Brannon Baxter determined, based on a referral from Lewis's bank and information from Verizon Wireless, that Lewis was involved in a scheme to re-sell wireless data

---

[2] *Franks v. United States*, 438 U.S. 154 (1978).

accounts obtained as part of his corporate account. (Doc. 15-1, ¶¶4–10) (Doc. 37-1, pp. 17–18).

The government then obtained two orders under the Stored Communications Act, 18 U.S.C. § 2703(d), directing Verizon and eBay to disclose additional information related to accounts associated with the alleged fraud. (Doc. 15-1, 18-2). Based on an affidavit provided by Agent Baxter, the government then sought, and received, search warrants for Lewis's Gmail account. (Doc. 15-2). The government used information obtained from Lewis's Gmail account and other sources to seek a search warrant for Lewis's home address from this Court. (Doc. 16-1, 17-1). Following a search of Lewis's home, the government identified several electronic devices that it believed contained child pornography. (Doc. 18-1, ¶¶4–6). The government then received ten separate warrants to search each of these devices and allegedly discovered evidence of child pornography. (Doc. 18-1).

Lewis has filed a motion to suppress the evidence in this case based on alleged material and intentional, or reckless, misrepresentations made by law enforcement in their affidavits seeking to establish probable cause. (Doc. 14). Lewis challenged these same applications in his pending case in the Northern District of Florida. The district judge there found that Lewis failed to show that the applications "contained material deliberate falsehood or reckless disregards for the truth" and denied the motion to suppress. *United States v. Lewis*, No. 1:18-cr-15, slip op. at 13 (N.D. Fla. Jan. 9, 2019).

Lewis filed the same motion to suppress here and provided the records from the previous proceeding, including the testimony of Lewis and Agent Baxter. (Doc. 14, 37-1, 38-1). Lewis supplemented the record with additional filings in this Court. (Doc. 40-1, 41-1, 42-1). The parties agreed that the Court can rely on the records from the Northern District in making its factual findings and neither party made any procedural objections to how the district judge in the Northern District of Florida disposed of the order. (Doc. 31).

In the Northern District, the judge held a "pre-*Franks*" hearing where Lewis was given a chance to expound on his argument while the government was given the opportunity to explain the discrepancies in its affidavit. *See United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013). Lewis was also given "a full opportunity to challenge or rebut that evidence." *Id.* The Court has considered the district judge's opinion from the Northern District, but is making its own independent findings based on the record, including the supplemental records and the hearing held here. *See United States v. Harnage*, 976 F.2d 633, 636 n.4 (11th Cir. 1992). At this hearing here, Lewis provided additional testimony and commentary on the supplemental exhibits provided to the Court. (Doc. 42, 44).

(Doc. 62, Report and Recommendation, issued May 17, 2019).

accounts obtained as part of his corporate account. (Doc. 15-1, ¶¶4–10) (Doc. 37-1, pp. 17–18).

The government then obtained two orders under the Stored Communications Act, 18 U.S.C. § 2703(d), directing Verizon and eBay to disclose additional information related to accounts associated with the alleged fraud. (Doc. 15-1, 18-2). Based on an affidavit provided by Agent Baxter, the government then sought, and received, search warrants for Lewis's Gmail account. (Doc. 15-2). The government used information obtained from Lewis's Gmail account and other sources to seek a search warrant for Lewis's home address from this Court. (Doc. 16-1, 17-1). Following a search of Lewis's home, the government identified several electronic devices that it believed contained child pornography. (Doc. 18-1, ¶¶4–6). The government then received ten separate warrants to search each of these devices and allegedly discovered evidence of child pornography. (Doc. 18-1).

Lewis has filed a motion to suppress the evidence in this case based on alleged material and intentional, or reckless, misrepresentations made by law enforcement in their affidavits seeking to establish probable cause. (Doc. 14). Lewis challenged these same applications in his pending case in the Northern District of Florida. The district judge there found that Lewis failed to show that the applications "contained material deliberate falsehood or reckless disregards for the truth" and denied the motion to suppress. *United States v. Lewis*, No. 1:18-cr-15, slip op. at 13 (N.D. Fla. Jan. 9, 2019).

Lewis filed the same motion to suppress here and provided the records from the previous proceeding, including the testimony of Lewis and Agent Baxter. (Doc. 14, 37-1, 38-1). Lewis supplemented the record with additional filings in this Court. (Doc. 40-1, 41-1, 42-1). The parties agreed that the Court can rely on the records from the Northern District in making its factual findings and neither party made any procedural objections to how the district judge in the Northern District of Florida disposed of the order. (Doc. 31).

In the Northern District, the judge held a "pre-*Franks*" hearing where Lewis was given a chance to expound on his argument while the government was given the opportunity to explain the discrepancies in its affidavit. *See United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013). Lewis was also given "a full opportunity to challenge or rebut that evidence." *Id.* The Court has considered the district judge's opinion from the Northern District, but is making its own independent findings based on the record, including the supplemental records and the hearing held here. *See United States v. Harnage*, 976 F.2d 633, 636 n.4 (11th Cir. 1992). At this hearing here, Lewis provided additional testimony and commentary on the supplemental exhibits provided to the Court. (Doc. 42, 44).

(Doc. 62, Report and Recommendation, issued May 17, 2019).

The Defendant objected to the report and recommendation. (Doc. 63). On June 19, 2019, the district judge overruled Defendant's objections and adopted the report, denying the Defendant's motion to suppress. (Doc. 71). In most cases, that would end the matter.

Instead, on March 2, 2020, the Defendant filed a pro se motion for reconsideration of the motion to suppress. (Doc. 121). That motion, just like the one he also filed in the Northern District case around the same time, was denied because he was represented by counsel and the Court's Local Rules required (as they still do) that such a motion be made through counsel when one is represented (as he was). (Doc. 122). The Court also noted (again, as the Northern District did) that there was also no basis for reconsideration, as the Defendant "presents no change in controlling law, newly available evidence, or a manifest injustice." *Id.*

Overlaying this time-period and continuing forward, the Defendant (among other things) underwent a competency evaluation and determination (Doc. 143, finding Defendant competent); retained new counsel (Doc. 127), obtained appointed counsel (Doc. 150), then began representing himself (Doc. 181); and had his bond revoked for threatening a witness and his pretrial services officer (Doc. 97) and has repeatedly challenged that determination (see, e.g., Doc. 182). In the meantime, he has also been convicted and sentenced in the Northern District of Florida case. (NDFL 1:18-cr-15, Doc. 274 & 361). He is awaiting trial here in the Middle District of Florida on the child pornography charge.

Pending now before the Court are several motions the Defendant has styled as: "Moton to Dismiss" (Doc. 214), to which the government has responded (Doc. 226); "Motion to Acquit Nolle Prosequi" (Doc. 254); and "Motion to Suppress, Motion to Reconsider Franks Hearing, and Motion to Reconsider Motion to Dismiss (if applicable)" (Doc. 255).

II.   Discussion

The law addressing the standard for reconsideration has already been addressed in a prior Order, quoting the Northern District of Florida's recitation of it to the Defendant:

> A motion to reconsider an interlocutory order is an 'extraordinary remedy to be employed sparingly,' *Lamar Advert. of Mobile, Inc. v. City of Lakeland, Fla.*, 19 F.R.D. 480, 489 (M.D. Fla. 1999), and will be granted only if there is a change in controlling law, newly available evidence, or a need to correct clear error or manifest injustice, *Madura v. BAC Home Loans Servicing L.P.*, 851 F. Supp. 2d 1291, 1296 (M.D. Fla. 2012). A motion for reconsideration is not an opportunity for a party to "relitigate[] what has already been found lacking," *Lamar*, 19 F.R.D. at 489, or to "raise arguments which could, and should, have been previously made, " *Scelta v. Delicatessen Support Servs. , Inc.*, 89 F. Supp. 2d 1311, 1320 (M.D. Fla. 2000). Defendant's motion does not present a change in controlling law, newly available evidence, or a manifest injustice.

(Doc. 122). Indeed, Court's have repeatedly stated that a motion for reconsideration is not an opportunity to "reargue – or argue for the first time – an issue the Court has already determined." *United States v. Srisanthia*, No. 2:13-CR-9-FTM-38UAM, 2013 WL 3815596, at *1 (M.D. Fla. July 23, 2013) (quotation and citation omitted). Nor is it an opportunity to "re-hash arguments that a party previously presented to the Court," to "re-package arguments previously raised" or to raise arguments that a defendant could have previously raised, but didn't. *United States v. Corley*, No. 4:08-CR-052-01, 2009 WL 10676005, at *2 (N.D. Ga. Aug. 17, 2009), aff'd, 408 F. App'x 245 (11th Cir. 2011) (quotations and citations omitted).

In short, as the court in *Srisanthia* noted, the "Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Srisanthia*, , 2013 WL 3815596, at *1. The Defendant must establish extraordinary circumstances to support reconsideration. *Id.* He must show "(1) an intervening change in the controlling law; (2) the availability of new evidence; (3) the need to correct clear error or prevent manifest

injustice." *Id.* (quotations and citations omitted). If he doesn't, the motion for reconsideration must be denied. *Id.*

Here, the arguments raised (over 3 years since the report and recommendation was issued and almost 3 years since it was adopted) in the Defendant's latest motion for reconsideration (Doc. 255) are the same arguments he raised in his prior motion (see Doc. 14), as well as those found in his numerous exhibits, during the hearing, and his closing argument made after the hearing on the initial motion (see Doc. 54). There is no change in the controlling law presented, there is no newly available evidence, and there is no manifest injustice. There is, instead, a rearguing, repackaging, and attempt to relitigate an issue that was already decided. It is due to be denied.

So too is his motion to dismiss (Doc. 214), which is a similar list of grievances and repackaging of his motion to suppress (Compare Doc. 255 with Doc. 214). Indeed, his "motion to dismiss" is really a challenge to the evidence and a request that the case against him in this district be dismissed because the evidence against him was (allegedly) wrongly obtained. This is essentially a motion for reconsideration of his motion to suppress, which is due to be denied. His titling the document as a "Motion to Dismiss," or a section of it as "Prosecutorial Misconduct," doesn't change that.

By way of just one example, he directly challenges the Northern District's denial of his motion to suppress, arguing that it was clearly erroneous and asks this Court to review it for "abuse of discretion and clear error," something this Court cannot do. (See, e.g., Doc. 214 p.23).

Much of his arguments stem from his challenges to the 18 U.S.C. § 2703(d) Orders involving his fraudulent scheme in the Northern District Case, that led to the search warrant

at his home business in the Middle District of Florida, that led to the discovery of the child pornography. But this has all already been addressed. (See Doc. 62, Report and Recommendation). In fact, in his "Prosecutorial Misconduct" section, he complains about errors made in the FBI agent's § 2703 Orders, all of which was previously – and extensively – litigated.

For example, the Court noted, at the beginning of the section addressing the § 2703 Orders:

> Lewis, not counsel in argument to the Court, then provides a legal assessment of his interpretations of 18 U.S.C. § 2703. Lewis's personal legal assessment then continues for the remainder of the exhibit as he annotates the order nearly line-by-line. Lewis does this for each order—even referring to it, correctly, as "commentary." See (Doc. 44, Exh. F-3, L-3, P-3, & R-3). None of Lewis's personal legal opinions or commentary change the evidence or show that while Agent Baxter noted inaccuracies or typos, they were at most the result of mere negligence not the product of intentional or reckless acts. As Judge Walker [in the Northern District case] noted in his order, Lewis is objecting to misrepresentations that are "at most the result of mere negligence." ([NDFL Case] No. 1:18-cv-15, Doc. 73 at 6).

(Doc. 62). Then, as to the search of his home, the Court already addressed that, as summarized below, and merely as one example:

> Given the facts in the affidavit, there was probable cause to believe a search of Lewis's residence, as specified in the court's order, would yield evidence of a fraud. As discussed in more detail above, Lewis conceded that he used his residence for some of his business activities, that he signed contracts using that address, and that he engaged in re-selling—although he argues he believed he was authorized to do so. (Doc. 38-1, pp. 248–52). He also conceded that his home address was used to forward mail for other companies alleged to be involved in the fraud. (Doc. 38-1, p. 255–56). Lewis has not shown that any of the supposed errors in the affidavit was material or provided evidence that any misstatement was intentionally or recklessly made.

(Doc. 62).

There is no showing of any actual prosecutorial misconduct alleged in his "motion to dismiss." There was no delay in prosecution, as complained about in Defendant's "violation

of Defendant's Sixth Amendment" section. His arguments about a violation of his "Fifth and Fourteenth Amendment" due process rights are completely baseless. His assertion that he had a contractual dispute with Verizon for which he should not have been prosecuted is belied by the fact that he was convicted of fraud offenses related to that conduct in the Northern District case and, in any event, is beyond the scope of this case. His contention that he was acquitted there is simply wrong. And his pages of direct challenges to the evidence against him as "Violation[s] of Defendants United States Constitutional Fourth Amendment Rights" is, as the government notes, a direct request to reconsider and relegate his motion to suppress, as much of this entire motion is. As such, it is due to be denied in its entirety.

Finally, his "Motion to Acquit Nolle Prosecui" (Doc. 254) is entirely without merit and unsupported by any law. In fact, of this short and wholly unsupported motion, the only thing worth mentioning is that with respect to his complaint about discovery, the Court notes that at prior hearings the government and then-defense counsel agreed that discovery had been provided and the Defendant acknowledged that when counsel (who was now serving as standby counsel) attempted to deliver the discovery to Mr. Lewis, he refused it. With respect to viewing the unlawful material, Mr. Lewis was told by the Court to attempt to make arrangements with the government to view that part of the discovery and encouraged to utilize standby counsel to make those arrangements, as the government isn't in a position to submit such images to him for his custody even though he is representing himself. In any event, this motion is entirely baseless and due to be denied.

### III.     Recommendation

For the reasons stated above, it is **RECOMMENDED** that Defendant's motions be **denied**.

**IT IS SO ORDERED** in Ocala, Florida, on May 10, 2022.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties
Standby Counsel
District Judge